IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAVON D. BROWN, | ) | |
| Plaintiff, | ) | Civil Action No. 7:12-cv-00202 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NASSEER MOBASHAR, *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Plaintiff Javon D. Brown, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Brown alleges that the defendants violated his constitutional rights by subjecting him to cruel and unusual punishment by denying him adequate medical treatment. The court finds that Brown's allegations do not rise to the level of a constitutional violation and, therefore, dismisses his complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.**

Brown alleges that on December 18, 2009, during a sick call request, a nurse examined him and observed a "raised area" on that back of his head. Brown states that the raised area had been there for about nine months before he filed his sick call request. Several days later, Brown alleges that defendant Dr. Mobashar examined him and documented an area about 2.5 cm in diameter protruding from the back, left side of his head. Brown states that Dr. Mobashar determined that the raised area was a cyst and noted that there was "no immediate need for excision." Dr. Mobashar recommended follow-up to determine any increase in size or symptoms of infection.

On February 10, 2012, Brown reported to the medical department again because the cyst on the back of his head was causing him pain. After a nurse examined Brown, she referred him

to Dr. Mobashar for further examination. The next day, Dr. Mobashar examined Brown's cyst, and ordered follow-up in a week "for possible aspiration." Brown states that Dr. Mobashar indicated that the cyst "seems to be benign."

On February 18, 2010, Brown reported to the medical department for his follow-up appointment. Brown alleges that the cyst had begun to grow in diameter and that it was still causing him pain. Dr. Mobashar tried to aspirate the cyst, but was unable to draw any fluid from it. Dr. Mobashar ordered further observation and determined that there was "no need for surgery at present."

On May 13, 2010, Brown reported to the medical department again due to pain from the cyst. On May 17, 2010, Brown met with Dr. Mobashar. Dr. Mobashar examined the cyst and noted no change in size. Brown alleges that Dr. Mobashar concluded that the cyst was benign and ordered further observation of the area. Dr. Mobashar ordered an x-ray of Brown's head and scheduled a three-month follow-up appointment.

On June 16, 2010, Brown was seen at a sick call appointment and asked to discuss the x-ray results with Dr. Mobashar. Brown indicates that he reported to medical staff that the cyst was becoming increasingly painful and making it difficult to sleep when the cyst touched his bed. It is unclear whether Brown met with Dr. Mobashar at this time.

On July 12, 2010, Brown reported to the medical department again stating that the cyst had grown and was still causing pain. Brown states that he was concerned that the cyst may be cancerous. A week later, Dr. Mobashar examined Brown and again recommended "further observation."

On August 17, 2010, Brown met with Dr. Mobashar. Brown states that it was noted that the cyst was swelling and that he was in constant pain from the area. Brown alleges that the cyst

2

had doubled in size and was tender to touch. After examination, Dr. Mobashar indicated that he would submit a request through QMC[1] for a surgical consult.

On September 14, 2010, Brown was examined by the medical department again. Brown alleges that the cyst had increased in size again and that further observation was recommended.

On December 28, 2010, Brown reported to the medical department for examination of the cyst due to increased swelling and pain. Brown states that the cyst had grown to "more than 5x6 cm." Dr. Mobashar determined that there was no need for cancer screening at that time and indicated that he would again file a request through QMC for a general surgical consult.

On April 8, 2011, Brown reported to the medical department to have the cyst examined because he was experiencing more frequent pain and increased difficulty sleeping due to the cyst's location on the back of his head. The nurse advised Brown that the QMC had responded to Dr. Mobashar's request for a general surgical consult by suggesting that the cyst be further observed for signs of increased swelling or infection. On April 14, 2011, Brown met with Dr. Mobashar and Dr. Mobashar recommended further observation and a follow-up appointment in two months for re-evaluation.

Brown alleges that in the months following, he continued to seek medical treatment for the removal or more scientific testing of the cyst. Brown claims that he was repeatedly referred for more follow-up evaluations and "watchful waiting." Brown states that the cyst has caused him migraines, pain, difficulty sleeping, and depression from the other inmates "ridicule[ing] and badgering" him about the "deformity."

---

[1] QMC stands for "Quality Medical Care" and is the system which the doctors utilize within the VDOC to request approval for offsite care of inmates.

Brown argues that the defendants have subjected him to cruel and unusual punishment by denying him adequate medical treatment. As relief, Brown seeks removal of the cyst and damages.

## II.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976); <u>Staples v. Va. Dep't of Corr.</u>, 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish deliberate indifference, a plaintiff must present facts to demonstrate that the defendant had actual knowledge of and disregard for an objectively serious medical need. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>see also</u> <u>Rish v. Johnson</u>, 131 F.2d 1092, 1096 (4th Cir. 1997). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>Russell v. Sheffer</u>, 528 F.2d 318, 319 (4th Cir. 1975); <u>Harris v. Murray</u>, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. <u>Russell</u>, 528 F.2d at 319 (citing <u>Shields v. Kunkel</u>, 442 F.2d 409 (9th Cir. 1971)). A delay in receiving medical care, with no resulting injury, does not violate the Eighth Amendment. <u>See</u> <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380-81 (4th Cir. 19993); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993); <u>Wynn v. Mundo</u>, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2004).

Brown acknowledges that he has been seen, evaluated, and treated by medical professionals on numerous occasions. Although he may disagree with the course of treatment he received, his claim is nothing more than a doctor-patient disagreement, which is not actionable

4

under the Eighth Amendment. Accordingly, the court finds that Brown has failed to state a constitutional claim.

### III.

For the stated reasons, Brown's complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

The Clerk of the Court is directed to send copies of this memorandum opinion and accompanying Order to the parties.

**ENTER**: This 14th day of June, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE